## In re DEERING MILLIKEN PATENT LITIGATION.

### No. 388.

Judicial Panel on Multidistrict Litigation.

Sept. 12, 1979.

OPINION AND ORDER

Before MURRAY I. GURFEIN, Chairman, and EDWIN A. ROBSON, STANLEY A. WEIGEL, ANDREW A. CAFFREY, ROY W. HARPER, and CHARLES R. WEINER, Judges of the Panel.

PER CURIAM.

This litigation consists of two actions, one pending in the District of South Carolina and the other pending in the Middle District of North Carolina. Both actions involve allegations of invalidity and infringement of certain patents, patent misuse and antitrust violations.

The South Carolina action actually consists of 37 different actions which were consolidated for trial by the South Carolina court.[1] The South Carolina action involves,

---

1. The Panel originally considered in 1970 the question of transfer under 28 U.S.C. § 1407 concerning the actions that have been consolidated in South Carolina. The Panel at that

on the one hand, numerous companies, or divisions of companies (the "throwsters"), that process synthetic filament yarns in order to make the yarns suitable for a wide variety of end uses, and, on the other hand, Deering Milliken, Inc. (DMI), Deering Milliken Research Corp. (DMRC), Moulinage et Retorderie de Chavanoz (Chavanoz), Ateliers Ronnais de Construction Textiles (ARCT–France) and ARCT, Inc. (the defendants[2]). In the South Carolina action, the defendants charged the throwsters with, *inter alia,* infringing several patents dealing with various aspects of synthetic yarn texturing. The throwsters, each of which allegedly was a licensee of one or more of these patents, claimed that the patents were invalid, misused and unenforceable, and also sought relief under the federal antitrust laws.[3]

After very extensive discovery and other pretrial proceedings, the South Carolina action went to a non-jury trial on only the liability issues in June, 1976. The trial was concluded after 91 trial days, and thereafter the South Carolina district court held as follows: (1) the throwsters had established their claim of a horizontal conspiracy in violation of Sections 1 and 2 of the Sherman Act among Chavanoz, DMRC, DMI and Leesona;[4] (2) the throwsters' claims

against ARCT–France and ARCT, Inc. for damages as a result of those two defendants' alleged violation of the antitrust laws were to be dismissed on the merits; (3) the licensing program and attendant conduct of Chavanoz, DMRC and DMI constituted a misuse of the patents involved in this litigation and all those patents were therefore unenforceable; (4) each of the patents involved in the South Carolina action was either invalid or had not been infringed by the throwsters; and (5) all claims by any defendant against the throwsters for patent infringement and unpaid royalties were to be dismissed on the merits. *Duplan Corp. v. Deering Milliken, Inc.,* 444 F.Supp. 648 (D.S.C.1977).

On March 26, 1979, the Court of Appeals for the Fourth Circuit affirmed the South Carolina district court's rulings with only one exception. The Court of Appeals found that defendants ARCT–France and ARCT, Inc. had participated in the horizontal conspiracy alleged by the throwsters, and that the throwsters had therefore established the liability of those two defendants on the throwsters' antitrust claims. *Duplan Corp. v. Derring Milliken, Inc.,* 594 F.2d 979 (4th Cir. 1979), *rehearing and rehearing en banc denied,* May 29, 1979.[5]

time declined to order Section 1407 transfer because it appeared likely that numerous motions under 28 U.S.C. § 1404(a) to transfer the non-South Carolina actions to the District of South Carolina would be granted. *In re Deering Milliken Patent Litigation,* 328 F.Supp. 504, 505–06 (Jud.Pan.Mult.Lit.1970). Those motions were in fact granted, and the Panel was not further involved with the actions until now.

2. Although these parties are actually the plaintiffs in some of the 37 actions that have been consolidated in the District of South Carolina, these parties have been designated as "defendants" in the South Carolina action. *Duplan Corp. v. Deering Milliken Inc.,* 444 F.Supp. 648, 658 (D.S.C.1977).

3. The district court in South Carolina characterized the throwsters' antitrust claims as follows:

The antitrust claims fall into two categories: (a) the claim of a vertical conspiracy between the named defendants arising out of [certain] license and sub-license agreements and the manner in which the business of the

defendants was conducted, and (b) a claim of horizontal conspiracy between the named defendants and Leesona [Corp., which is a manufacturer and seller of textile machinery and which licensed patents and technology relating to the yarn processing techniques involved in the South Carolina action,] arising out of agreements entered into in 1964 which settled certain patent litigation then pending between Leesona and the defendants. *Id.* at 660.

4. The court found that the 1964 settlement agreement between Leesona and the defendants "amounted in effect to the cross-licensing of the Chavanoz and Leesona patents by the two patent owners who effectively dominated the false twist [texturing] industry, and this gave them the power to fix and maintain prices in the form of royalties which they consistently exercised thereafter." *Id.* at 686 (footnote omitted).

5. DMRC and Chavanoz represented at oral argument before the Panel that certain parties intend to file a petition for a writ of certiorari before the United States Supreme Court.

The North Carolina action before the Panel was commenced in September, 1976, by DMRC and Chavanoz against J.P. Stevens & Co., Inc. (Stevens). DMRC and Chavanoz allege that Stevens infringed five patents, each of which has now been held invalid and unenforceable in the South Carolina action. Stevens filed two counterclaims. One alleges patent invalidity, noninfringement and patent misuse. The other alleges that Stevens has been injured by the same horizontal antitrust conspiracy involved in the South Carolina action.[6] Stevens joined ARCT–France, ARCT, Inc. and DMI as additional defendants on the second counterclaim.

No discovery has yet been taken in the North Carolina action. The North Carolina action was initially stayed pending the outcome of the liability trial of the South Carolina action, and the North Carolina action was again stayed pending a final decision by the Court of Appeals on the appeal in the South Carolina action.

Stevens has moved the Panel, pursuant to 28 U.S.C. § 1407, to transfer the North Carolina action to the District of South Carolina for coordinated or consolidated pretrial proceedings with the action pending there. DMRC, ARCT–France, ARCT, Inc., Chavanoz and plaintiffs in the South Carolina action oppose this motion.

We find that, although these actions may still involve some common questions of fact, transfer under Section 1407 would not necessarily serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation. Accordingly, we deny the motion to transfer.

Stevens argues that the North Carolina action and the South Carolina action share a multitude of factual questions concerning, *inter alia,* the following matters: (1) whether the five patents which are common to both actions are invalid and unenforceable; (2) whether the defendants in the South Carolina action and Lessona conspired in

violation of the federal antitrust laws concerning those patents; and (3) the nature of damages suffered by Stevens and by the throwsters involved in the South Carolina action. Stevens recognizes that many of these common questions of fact have already been resolved in the South Carolina action, and Stevens states that it intends to rely on the doctrine of collateral estoppel not only to invalidate the patents asserted against it, but also to establish the liability of the defendants to Stevens for the antitrust violations alleged in Stevens' counterclaim. Stevens states that it will rely upon the Supreme Court's decisions in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), in arguing for the application of the doctrine of collateral estoppel in the North Carolina action. Stevens emphasizes that both *Blonder-Tongue* and *Parklane* state that the application of collateral estoppel is a matter for the trial court's discretion, based on fairness to the parties. Stevens maintains that the South Carolina judge, who presided over both extensive pretrial proceedings and a very lengthy trial, is clearly the judge most familiar with this litigation and is therefore in the best position quickly and efficiently to resolve the claims raised in the North Carolina action. Thus, Stevens argues, Section 1407 transfer is necessary in order to eliminate the possibility of inconsistent pretrial rulings, prevent any duplicative discovery, and conserve the time of the parties, the witnesses and the judiciary.

The opponents of transfer, on the other hand, emphasize that the South Carolina action is ten years old and is very far advanced. Opponents concede that the doctrine of collateral estoppel will likely dispose of the patent validity and enforceability issues in the North Carolina action once the appellate process runs its course in the South Carolina action. But these parties

---

**6.** Stevens was not a licensee under any of the patents involved in the South Carolina action. According to Stevens' counterclaim, however, Stevens was a licensee of Leesona. In order to

purchase false twist texturing machines from Leesona, Stevens states, it was required to sign a "use license agreement" with Leesona and to pay royalties thereunder to Leesona.

maintain that the applicability of that doctrine to the antitrust issues in the North Carolina action will be hotly disputed by the parties because of Stevens' status as a non-licensee of the patents involved in the South Carolina action. Opponents further argue that statute of limitations issues are present regarding Stevens' antitrust counterclaim. These issues are not present in the South Carolina action, opponents contend, and that action would be unfairly delayed by transfer of the North Carolina action under Section 1407 at this late stage of the proceedings in the South Carolina action.

We find movant's arguments unpersuasive. Most, if not all, of the common questions of fact between the two actions before us arise from the liability issues in each action. All pretrial proceedings, as well as a trial, on the liability issues in the South Carolina action have long since been completed. Furthermore, the views of the district judge in the South Carolina action, and those of the Court of Appeals, on those issues are well documented. *Duplan Corp. v. Deering Milliken Inc., supra,* 444 F.Supp. 648, *aff'd in part and rev'd in part,* 594 F.2d 979. As a result, from the standpoint of familiarity, the judge in the North Carolina action will be close to the shoes of the South Carolina judge. Also, interjection of the North Carolina action into the extremely advanced proceedings in the South Carolina action could delay the completion of those proceedings. Under these circumstances, we conclude that the purposes of centralizing pretrial proceedings under Section 1407 can best be achieved by leaving each action alone. *See In re Western Electric Co., Inc. Semi-conductor Patent Litigation,* 436 F.Supp. 404, 406 (Jud.Pan.Mult. Lit.1977).

We note that at oral argument before the Panel counsel for DMRC and Chavanoz and counsel for Stevens stated that all discovery heretofore completed in the South Carolina action and relevant to the North Carolina action may be used in that action. Transcript at 99 and 106.

IT IS THEREFORE ORDERED that the motion, pursuant to 28 U.S.C. § 1407, to centralize the actions listed on the following Schedule A for coordinated or consolidated pretrial proceedings be, and the same hereby is, DENIED.

### SCHEDULE A